Ashley Nicole SONLIN, a minor, by her Parents and Natural Guardians, Donald J. SONLIN and Jill Sonlin, and Donald J. Sonlin and Jill Sonlin, Individually and in their own right

v.

ABINGTON MEMORIAL HOSPITAL and Ara Sarkis Moomjian, M.D. and Nilima Ragavan, M.D. and Eric J. Margolis, M.D., and Laurence A. Somers, M.D., Appellees.

Appeal of Jill Sonlin.

Ashley Nicole Sonlin, a minor, by her Parents and Natural Guardians, Donald J. Sonlin and Jill Sonlin, and Donald J. Sonlin and Jill Sonlin, Individually and in their own right

v.

Abington Memorial Hospital and Ara Sarkis Moomjian, M.D. and Nilima Ragavan, M.D. and Eric J. Margolis, M.D., and Laurence A. Somers, M.D., Appellees.

Appeal of Ashley Nicole Sonlin, by her Parents and Natural Guardians, Donald J. and Jill Sonlin.

Ashley Nicole Sonlin, a Minor, by her Parents and Natural Guardians, Donald J. Sonlin and Jill Sonlin, and Donald J. Sonlin and Jill Sonlin, Individually and in their own right

v.

Abington Memorial Hospital and Ara Sarkis Moomjian, M.D. and Nilima Ragavan, M.D. and Laurence A. Somers, M.D., Appellees.

Appeal of Abington Memorial Hospital, Ara Sarkis Moomjian, M.D., Nilima Ragavan, M.D.

Superior Court of Pennsylvania.

Argued Dec. 7, 1999.
Filed Feb. 17, 2000.
Reargument Denied March 31, 2000.

Thomas B. Rutter, Philadelphia, for Ashley N., Jill and Donald Sonlin.

Marcy H. Landis, Philadelphia, for Abington Memorial Hosp., Moomjian, M.D., Ragavan, M.D. and Margolis, M.D.

Deborah M. Knight, Philadelphia, for Laurence A. Somers, M.D.

Before MUSMANNO, HESTER and

MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 The parties to this medical malpractice action have cross-appealed from a judgment for $2,493,889 in favor of Appellants, plaintiffs below.

¶ 2 On May 29, 1993, Appellant Ashley Sonlin was born 6½ weeks prematurely in Appellee hospital. Following the placement of an umbilical catheter to monitor blood oxygen levels,[1] the child developed a thrombosis in her left leg, and after three days was transferred to Children's Hospital. Appellees' failure to diagnose the vascular compromise caused by the clot resulted in dry gangrene requiring amputation of the infant's left leg some few inches below the knee when Ashley was 11 days old.

¶ 3 Suit was commenced on March 15, 1994 by Ashley's parents on her behalf and in their own right. Because liability was conceded, trial was held solely to determine damages, both for Ashley's injury, and on Appellant Jill Sonlin's claim of negligent infliction of emotional distress, which was dismissed by the trial court on Appellees' motion for compulsory non-suit. The jury awarded $2,185,960, to which was added $307,929 in delay damages. The instant cross appeals followed.

¶ 4 Appellants have challenged the propriety and adequacy of the delay damage award and the court's grant of a compulsory non-suit as to Jill Sonlin's negligent infliction of emotional distress claim. Appellees, on the other hand, argue that the trial court erred in refusing their requests to pay the damage award in installments and reduce the award to present value.

■■■ ¶ 5 We first note that we will not disturb the trial court's award of damages awarded under Pa.R.C.P. 238 absent an abuse of discretion. *Liberty v. Geneva College*, 456 Pa.Super. 544, 690 A.2d 1243 (1997). "[A]n abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Paden v. Baker Concrete Construction, Inc.*, 540 Pa. 409, 412, 658 A.2d, 341, 343 (1995).

■■■ ¶ 6 Appellants first assign error to the trial court's acceptance of a settlement offer which, it is argued, did not comply with the requirements of Rule 238. Specifically, Appellants claim that the writing by which the offer was conveyed did not reveal the identity of the underwriter, the terms of the offer were not open for 90 days, and the actual costs involved in each of the alternative proposals advanced were not disclosed. Appellants also take exception to the date used by the trial court in calculating delay damages.

¶ 7 Pa.R.C.P. 238 reads in pertinent part as follows:

(a)(2) Damages for delay shall be awarded for the period of time . . .

(ii) in an action commenced on or after August 1, 1989, from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision . . .

(b) The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,

(1) after which the defendant has made a written offer of . . .

(ii) a structured settlement underwritten by a financially responsible entity

and continued that offer in effect for at least ninety days or until commencement of trial, which ever first occurs, which offer was not accepted and the plaintiff did not recover by

---

* Retired Justice assigned to Superior Court.

1. Lack of lung development in premature infants dictates that blood oxygen be monitored.

award, verdict or decision, exclusive of damages for delay, more than 125 percent of . . . the actual cost of the structured settlement plus any cash payment to the plaintiff . . .

¶ 8 The settlement offer document, a letter, contains two proposals which are specifically described as "valid for seven days from July 22," (Letter of July 23, 1997), that is, the day before the proposals were submitted in writing. The trial court nevertheless found that "an offer having a value of $1,750,000. remained in effect until the time of trial," (Trial Ct. Op. at 8), and that the seven day time period specified in the offer "was a reference to the value of the investments, which would have to be recalculated after seven days to reflect then current market conditions." (*Id.*) There is, however, no mention made anywhere in the settlement letter of a change in market conditions affecting the validity of the offer, or of its pendency until the time of trial. The trial court's interpolation of such a contingency is therefore improper.

¶ 9 Appellants also find Appellees' failure to identify the underwriter of the settlement or the actual cost of the structured settlement to be in contravention of the Rule. The trial court opined that it found no support in the rule for Appellees' claim of entitlement to such information.

¶ 10 While we were unable to locate specific case authority for the proposition that a written settlement offer must, to be legitimately used as a tolling mechanism for the period for calculation of delay damages, include those elements enumerated in the Rule, our Supreme Court has addressed at least one of these by indirection. In *Arthur v. Kuchar*, 546 Pa. 12, 682 A.2d 1250 (1996), the Court found that an oral settlement offer which had been placed on the record during trial and later transcribed in the notes of testimony was the functional equivalent of a written offer for purposes of the Rule. The offer was conditioned on immediate acceptance of the proposal and termination of trial. The Court found that because it was not specifically continued in effect for 90 days and trial had already commenced, the offer failed to satisfy the timing requirements of the Rule.

¶ 11 Despite the factual divergence between the instant case and *Arthur*, we find that one principle is common to both: a settlement proposal must contain a clause expressly validating the offer for 90 days or until time of trial. Such a term may not be assumed to be intended, extrapolated from outside sources or inferred if the offer itself is to be considered genuine under the Rule.

¶ 12 Moreover, without identification of the underwriter, no knowledgeable appraisal of the offer's legitimacy is possible, since the trial court's determination of whether an offer is sufficient to toll assessment of delay damages depends, *inter alia*, on the financial stability of the underwriter. *See* Pa.R.C.P. 238, Civil Procedural Rules Committee Explanatory Note. Further, the Explanatory Note provides that the court's main inquiry as to the viability of the structured settlement will revolve about the costs of the settlement. *Id.* Absent these elements, the time factor, the underwriter, and most of all the actual cost of the settlement, we are compelled to find that the trial court erred in accepting Appellees' proposal as sufficient under the terms of the Rule to toll the period for assessment of delay damages.[2] Accordingly, we must remand for recalculation of the amount due, which brings us to Appellants' next claim, that the date from which the delay damages were to be calculated was wrong.

---

**2.** Appellees insist that because the offer was not withdrawn, and because the identity of the underwriter and the cost of the settlement were "known to Plaintiffs' counsel," the requirements of the Rule are met. (Appellees' Brief at 14). The obvious purpose of a writing to convey settlement offers, not to mention the specific provisions of the Rule, would be defeated by acceptance of Appellees' argument.

¶ 13 Appellants argue that the court erred in computing the amount of the delay damages from July 23, 1997, when the settlement offer discussed above was tendered, and on the molded verdict, that is, the verdict less $800,000 paid to Appellants prior to trial but after July 23, 1997. As we have determined that the structured settlement proposals advanced on July 23, 1997 did not qualify under the terms of the Rule to toll the delay damages period, we need not address this issue further than to agree that the date used by the trial court is incorrect.

¶ 14 Appellants also contend that the trial court erred, on both procedural and substantive grounds, in dismissing on motion for a compulsory non-suit Appellant Jill Sonlin's claim of negligent infliction of emotional distress. As to the procedure, we are compelled to agree, as Appellees had presented defense evidence during Appellants' case. Our Supreme Court has ruled that where a defendant has offered evidence either during or after the plaintiff's case a non-suit may not be granted. *Harnish v. School District of Philadelphia*, 557 Pa. 160, 732 A.2d 596 (1999); *Highland Tank and Mfg. Co. v. Duerr*, 423 Pa. 487, 225 A.2d 83 (1966). Appellees have contended that Appellants' procedural claim was abandoned by Appellants' intention, stated in a footnote, not "to waste ... time on procedural arguments of this type." (Appellants' Brief at 30 n. 18) We agree. An examination of the merits of Appellants' argument, however, does not alter the result.

¶ 15 A compulsory non-suit is appropriately granted only where "the factfinder, viewing all the evidence in favor of the plaintiff, could not reasonably conclude that the essential elements of a cause of action have been established." *Biddle v. Johnsonbaugh*, 444 Pa.Super. 450, 664 A.2d 159, 161 (1995).

¶ 16 Appellants' claim is based on the theory of bystander recovery for negligent infliction of emotional distress enunciated in *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979). The criteria for stating this cause of action, that is for determining the foreseeability of the tort, are 1) the location of the plaintiff near the scene of the traumatic event; 2) the "shock result[ing] from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance" of the event; 3) a close relationship between plaintiff and the victim of the event. *Id.* at 170, 404 A.2d at 685; *Mazzagatti v. Everingham by Everingham*, 512 Pa. 266, 278, 516 A.2d 672, 677 (1986). The plaintiff must also have sustained some bodily harm from the mental disturbance brought on by observation of the event. *Mazzagatti, supra; Crivellaro v. Pennsylvania Power & Light Co.*, 341 Pa.Super. 173, 491 A.2d 207, 209–10 (1985).

¶ 17 The basis of Appellant's claim is her reception, on June 1, 1993, of the news that the discoloration of Ashley's leg which she had previously been assured was a bruise, was in fact a thrombosis, and that amputation of the limb was likely. Appellants characterize this as a discrete occurrence equivalent to the automobile accident which took the victim's life in *Sinn*. She relies heavily for an analogue on the factual situation in *Love v. Cramer*, 414 Pa.Super. 231, 606 A.2d 1175 (1992). There the plaintiff sustained the actionable shock when she witnessed her mother's death from a heart attack after the mother's doctor had, over an extended period, refused to investigate symptoms indicative of a cardiac problem. This Court found that the plaintiff's observation of the fatal heart attack supplied the discrete and identifiable traumatic event triggering recovery under *Sinn*. We made clear that the death, not the negligence of the doctor was the actionable factor. Thus *Love* offers no analogy with the instant case.

¶ 18 Appellants also advance this Court's decision in *Turner v. Medical Ctr., Beaver, PA, Inc.*, 454 Pa.Super. 645, 686 A.2d 830 (1996), as dispositive support for their position. There the plaintiff was forced to deliver her sister's stillborn fetus, in the

hospital, after hospital personnel ignored her pleas for assistance. We held that she had stated a cause of action for negligent infliction of emotional distress as a relative in a situation where the trauma was foreseeable, and in which she would otherwise have been a bystander, but was forced to participate in the foreseeable traumatic event specifically because of the defendant's negligence. Although the delivery of the fetus was not considered the traumatic event, the hospital's negligence as the cause of the plaintiff's participation in the delivery where the trauma was foreseeable distinguishes this case from the instant matter.

¶ 19 In fact, the amputation of Ashley's leg occurred eight days after Appellant received the news that negligence had occurred. Indeed, at the point identified as the traumatic event, amputation was a likelihood, not a certainty. Tragically, the thrombosis could not be resolved after the treatments applied during Ashley's stay at Children's Hospital, but the discrete and identifiable traumatic event became recognizable as such only after eight days had passed. Thus what is identified as a crisis point was not contemporaneous with the amputation, nor with the negligent placement of the catheter, to neither of which was Appellant a witness. *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984). Accordingly, this claim fails.

¶ 20 As to the issues raised by Appellees on their cross appeal, it is argued that the trial court erred in refusing to allow periodic payment of future damages pursuant to Healthcare Services Malpractice Act, 40 P.S. § 1301.101 *et seq.*, or to reduce the damages to present value.

¶ 21 Section 1301.832–A of the Act provides that the court, "upon motion of any party, may consider that the damages be paid by periodic or installment payments, provided that the terms of such payments be agreed to by all parties." Appellants refused to accept payment on the installment plan. Although Appellees would have us believe that the trial court's refusal to order periodic payments is attributable solely to a belief that it lacked jurisdiction to do so, the trial court in fact concluded that it would in any event have refused to order such payments because Appellees' sole reason for their request was the unsupported assertion that such a plan would be in the best interests of all parties. Appellees also argue that the Act advocates payments over time, but we are not persuaded. Indeed, our Supreme Court has held that "[p]ersonal injury awards are usually lump-sum payments, and are not paid in weekly or monthly installments." *Kaczkowski v. Bolubasz*, 491 Pa. 561, 567, 421 A.2d 1027, 1031 (1980) (footnote omitted). The Act provides an option which the court may adopt contingent upon the parties' agreement. No agreement is mandated, and the language of the statute seems to imply that the court may override an agreement. Here Appellees provided the court with no reason to disregard Appellants' rejection of the proposed plan. Even now Appellees offer nothing specific to this case which would justify the order they seek. We find no fault with the court's decision.

¶ 22 Finally, Appellees contend that the trial court erred in denying their motion to reduce the damage award to present value. In *Kaczkowski, supra,* our Supreme Court held that future lost wages should not be discounted, that "both a productivity factor and an inflation factor should be reflected in an award of lost future earnings," *id.* at 566, 421 A.2d at 1029, to obviate the necessity for an adjustment of the verdict on the basis of these factors. The Court adopted the total offset method of calculating damages which requires that information concerning both inflation and productivity be presented to the jury rather than merely discounting a damage award by 6% simple interest to reach present value.

¶ 23 Although the Court specifically declined to expand its ruling to contexts oth-

er than future lost earnings, opining that these should be resolved on a case by case basis, it noted principles long settled in Pennsylvania law that "damages are to be compensatory to the full extent of the injury sustained," and that actual compensation is given "by graduating the amount of damages exactly to the extent of the loss." *id.* (citations omitted). These rules were clearly considered by the trial court in denying Appellees' request. The court observed that "the inflation that the Supreme Court found to be a fact of life in *Kaczkowski* is even greater in the field of medical services, where inflation is running at a rate greater than the average for all goods and services." (Trial Ct. Op. at 11).

¶ 24 Appellees have offered no authority to contradict the information relied upon by the trial court in reaching its conclusion; instead they advocate abandonment in this case of the rule for future damages calculation enunciated in *Kaczkowski*. Given the potential for unfairness posed by such a reduction and the permanency of Ashley's loss, Appellees' suggestion is unpersuasive. As the Supreme Court noted, the total offset method, which assumes that "in the long run, future inflation and the discount rate will offset each other," *Id.* at 580, 421 A.2d at 1037, assures that "when there is a variance, [between interest rates and inflation,] it will be in favor of the innocent victim and not the tortfeasor who caused the loss." *id.* at 582, 421 A.2d at 1038. Thus despite the difference in context between this case and *Kaczkowski*, we find the trial court properly declined to reduce to present value the damages awarded by the jury.

¶ 25 Accordingly, that portion of the judgment related to delay damages is vacated, and the case is remanded for recalculation of the delay damages award.

¶ 26 Judgment affirmed in part and vacated in part. Case is remanded. Jurisdiction is relinquished.