Scott TEAMANN

v.

David J. ZAFRIS, Patrick K. Burke, Kathleen R. Majors, Joseph Baker, Richard A. Jerrell, Skips Contracting, Inc., a corporation, Special Delivery Services, Inc., a corporation, Pennsylvania Turnpike Commission and The Lane Construction Corporation, a corporation.

Appeal of Richard A. Jerrell and Skip's Contracting, Inc.

Walter Baker, as Administrator as Proasequendum of the Estate of Shawnn Baker, Deceased,

v.

David J. Zafris, Patrick K. Burke, Kathleen R. Majors, Richard A. Jerrell, Skip's Contracting, Inc., a Corporation, Special Delivery Services, Inc., a Corporation, Pennsylvania Turnpike Commission, and The Lane Construction Company, a Corporation.

Appeal of Walter Baker.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2002.
Decided Nov. 6, 2002.

Andrew G. Kimball, Pittsburgh, for appellants.

Kenneth J. Hall, Philadelphia, for appellee, W. Baker.

Louis C. Long, Pittsburgh, for appellee, Dept. of Transportation.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and KELLEY, Judge.

OPINION BY Judge PELLEGRINI.

Walter Baker (Baker), as Administrator of the Estate of his deceased son, Shawnn Baker, appeals from an order of the Court of Common Pleas of Allegheny County (trial court) dismissing his claims against the Pennsylvania Turnpike Commission (Turnpike Commission) and against the Lane Construction Company, Inc. (Lane Construction) based on the statute of limitations and remitting part of the verdict against Richard A. Jerrell (Jerrell) and Skip's Contracting, Inc. (Skip's) from $3.2 million to $2.5 million. Jerrell and Skip's have also filed an appeal from the trial court's order regarding the delay damages that were assessed against them. These appeals have been consolidated for our review.

These appeals emanate from a five-car collision on the Pennsylvania Turnpike in Westmoreland County on the evening of October 10, 1993, that occurred at 11:00 p.m. Lane Construction, the general contractor for a Turnpike Commission project, was to update the drainage system along a six-mile stretch of the Pennsylvania Turnpike (Turnpike). David Zafris (Zafris) was driving his car (vehicle one) in the right lane of the Turnpike that paralleled the construction area which had concrete barriers along the right shoulder and prevented access to the berm of the road. Zafris' vehicle got a flat tire while driving in this area, and not finding a place to pull off the road, he put his flashers on, slowed his speed, and drove his car to the end of a straightaway. There he stopped to change the tire with the car partially remaining in the right lane due to the concrete barriers, thereby requiring cars traveling on the Turnpike to travel in the left lane in order to pass his stopped car.

Zafris got out of the vehicle to change the tire and his passenger, Scott Teamann (Teamann), also got out to direct traffic around the stopped car using a flashlight. Several cars passed the stopped vehicle in the left lane without incident. Then, a car driven by Patrick Burke (Burke) (vehicle two) in the right lane stopped just before hitting Zafris' car. Following behind Burke in the right lane were cars driven by Kathleen Majors (Majors) (vehicle three) and her father, Joseph Baker (vehicle four), which also stopped before colliding with Burke or Zafris. However, a 26–foot long straight truck driven by Jerrell (vehicle five) in the course and scope of his employment with Skip's[1] was also driving in the right lane, did not stop in time, crashing into the rear of Baker's car and causing a chain reaction with each car hitting the car in front of it. As a result of these collisions, Burke's car, Majors' car and Baker's car caught on fire. Burke was the sole occupant of his car. In Majors' car were her sister, Jocelyn Bradley, and Daniel Bradley, the son of Jocelyn and her husband Robert, as well as Majors' daughter. In Baker's car were his wife, Barbara, and three of their grandchildren—Doran Robert Bradley, Corey Bradley (sons of Jocelyn and Robert Bradley) and Shawnn Baker, the son of Walter Baker and Rhonda Baker–Anderson. Two of the Baker's grandchildren, seven year-old

---

1. Jerrell was the owner of Skip's Contracting and provided transportation to move air freight from point to point.

Doran Bradley and nine year-old Shawnn Baker, died in the fire. Other individuals involved in the collisions were seriously injured, including Teamann, who lost his left leg, Barbara Baker, who suffered second degree burns and various injuries, and Zafris, who suffered partial and full thickness body burns.

Litigation followed.[2] Prior to trial, the Turnpike Commission and Lane Construction filed a motion for judgment on the pleadings alleging that they were immune from suit against all of the parties pursuant to the statute of limitations, doctrine of sovereign immunity and the government contract defense. The trial court granted their motion relative to the statute of limitations but denied the remaining portions of their motion. All of the lawsuits were consolidated for a liability trial in October 1998 with the jury returning the following verdict: causal negligence of Zafris—19%; causal negligence of Jerrell/Skip's—36%; causal negligence of the Turnpike Commission—38%; causal negligence of Lane Construction—7%; and contributory negligence of Teamann—10%. Subsequently, different juries considered the damage claims of the injured parties, but the only award at issue in this case is a jury award to the estate of Shawnn Baker for $3.2 million for his death.

In that case, the parties filed post-trial motions regarding the liability and damage phases of the litigation and issues regarding the manner in which the verdicts should be molded, specifically, the delay damages and reduction in the amount of damages for pain and suffering. Granting the defendants' motion, the trial court reduced that judgment from $3,200,000 to $2,500,000 plus delay damages, by deducting $700,000 from the $900,000 awarded for pain and suffering. The trial court then molded the verdict against Jerrell and Skip's in the amount of $1,625,000 plus delay damages, but noted that they could not be recovered after January 20, 2000, because Shawnn Baker's estate was responsible for the delay. Ultimately, the trial court issued an order dated February 7, 2001, entering judgment for Walter Baker, as Administrator of the Estate of Shawnn Baker, against Jerrell and Skip's in the amount of $2,230,056.40. It is from this order that Walter Baker and Jerrell and Skip's have appealed.

## JERRELL'S AND SKIP'S APPEAL

Jerrell's and Skip's only argument on appeal is that the trial court improperly imposed delay damages on the verdict for Shawnn Baker entered against them pursuant to Pa. R.C.P. No. 238, which provides the following:

(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code,

2. All of the injured parties sued each other as well as Jerrell, Skip's, the Commonwealth of Pennsylvania, Department of Transportation, the Turnpike Commission and Lane Construction. However, only relative to this appeal was the lawsuit involving Walter Baker and Rhonda Baker–Anderson, the parents of Shawnn Baker, who sued Jerrell and Skip's, the Turnpike Commission and Lane Construction, alleging negligence and seeking damages based on a survival action for Shawnn's pain and suffering between the time of his injuries and his death; his total estimated future earning power, his loss of retirement and social security income and other financial losses.

42 Pa.C.S. § 7361, and shall become part of the verdict, decision or award.

(2) Damages for delay shall be awarded for the period of time:

(i) in an action commenced before August 1, 1989, from the date the plaintiff first filed a complaint or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision; or

(ii) in an action commenced on or after August 1, 1989, from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.

* * *

(b) The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,

(1) after which the defendant has made *a written offer* of

(i) settlement in a specified sum with prompt cash payment to the plaintiff, or

(ii) a structured settlement underwritten by a financially responsible entity,

and continued that offer in effect *for at least ninety days* or until commencement of trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash payment to the plaintiff; or

(2) during which the plaintiff caused delay of the trial.

(Emphasis added.) Jerrell and Skip's contend that they should not be liable for delay damages because the exposure of the claims against them clearly exceeded their liability limits, and rather than simply offering policy limits to the claimants as a group, in a letter dated September 13, 1994, their insurance carrier, Nationwide Insurance Company (Nationwide), offered its entire policy limit of $100,000 on behalf of Jerrell and Skip's with a suggested allocation among the claimants.[3] Specifically regarding Shawnn Baker, Nationwide proposed a settlement of $40,250. Jerrell and Skip's further contend that in order to comply with Rule 238, the offer was made less than a year after the filing of the complaint and was never revoked.

In its August 10, 2000 opinion addressing Jerrell and Skip's post-trial motions, the trial court stated the following regarding the imposition of delay damages against them with respect to Shawnn Baker:

An award was entered in the amount of $3,200,000. I am deducting the $700,000 remittitur, so the award is reduced to $2,500,000.

As of the date of trial, the Turnpike Commission and Lane were not parties to the lawsuit instituted by Walter Baker, Administrator. The only defendants were Mr. Zafris and Jerrell/Skip's. Since the other defendants do not belong in this case, I must mold the verdict by excluding the jury's findings as to these defendants. Thus, I am left with the jury's finding that the settling defendant (Mr. Zafris) is 19% responsible and that the nonsettling defendant (Jerrell/Skip's) is 36% responsi-

---

**3.** In their brief, they state: "The irony of [sic] Rule 238 analysis in this case is that, in all likelihood, there is no manner in which policy limits could have been offered so as to have been accepted by plaintiffs. With policy limits of $100,000, and damages in the millions, plaintiffs did not want to run the risk of releasing Jerrell's/Skip's liability share. Notwithstanding, Jerrell's/Skip's policy limits were undeniably 'on the table.' " (Jerrell/Skip Brief at pp. 5–6.)

ble. Therefore, plaintiff's recovery must be reduced by Mr. Zafris's share of responsibility (19/55 of 35%) vis-à-vis Jerrell/Skip's share (36/55 or 65%). Consequently, a molded verdict will be entered against Jerrell/Skip's in the amount of $1,625,000 and delay damages will be based on this molded verdict.

Delay damages cannot be recovered after 1/20/2000 because plaintiff was responsible for the delay.

In addressing whether Rule 238 delay damages were not appropriate because of Jerrell and Skip's offer, the trial court relied on *Sonlin v. Abington Memorial Hospital*, 748 A.2d 213 (Pa.Super.2000), which held that pursuant to Rule 238, a settlement proposal had to contain a clause expressly validating the offer by 90 days or until time of trial. The trial court concluded that because such a clause was not contained in the September 13, 1994 letter, delay damages were appropriate.[4]

In *Sonlin*, the parents of a premature baby sued the hospital when the child, at 11 days old, had to have her leg amputated because hospital personnel, after placing an umbilical catheter in her left leg to monitor blood oxygen levels, failed to diagnose a vascular compromise in that leg which caused gangrene. Liability was conceded, and the jury awarded the child $2,185,960 in damages to which the trial court added $307,929 in delay damages. The parents appealed, challenging the adequacy of the delay damages, arguing that the trial court should not have accepted the settlement offer which did not comply with the requirements of Rule 238 because, among other things, the terms of the offer were not open for 90 days. Finding that the settlement offer only contained language that the offer was valid for seven days beginning July 22, 1997, and relying upon *Arthur v. Kuchar*, 546 Pa. 12, 682 A.2d 1250 (1996),[5] the Superior Court held in dicta that in order to toll the assessment of delay damages, a settlement proposal had to contain a clause expressly validating the offer for 90 days or until the time of trial, and the settlement offer document did not contain such a clause: "A settlement proposal must contain a clause expressly validating the offer for 90 days or until time of trial. Such a term may not be assumed to be intended, extrapolated from outside sources or inferred if the offer itself is to be considered genuine under the Rule." *Sonlin*, 748 A.2d at 216.[6]

---

4. The trial court acknowledged that prior to February 17, 2000, the date the *Sonlin* decision was filed, the court might have ruled that delay damages could not have been recovered for a certain time period when an offer was never withdrawn. It also acknowledged in another portion of this litigation involving other plaintiffs and defendants that a letter offering a settlement did not contain the clause expressly validating the offer for any period of time because counsel probably did not expect the court to impose the requirement imposed by the *Sonlin* decision.

5. In *Kuchar*, our Supreme Court found that an oral settlement offer that had been placed on the record during trial and later transcribed was the same as a written offer for purposes of Rule 238, and was conditioned on the immediate acceptance of the proposal and termination of trial. Because the offer was not specifically continued in effect for 90 days and trial had already commenced, our Supreme Court held that the offer failed to satisfy the timing requirements of Rule 238.

6. Jerrell and Skip's also argue that *Sonlin* was not filed until five years after their settlement offer was extended, and it should not be applied retroactively because it is unreasonable to impose delay damages upon them based upon legal authority that did not exist at the time the settlement offer was made. Because we have determined that the trial court erred in its reliance on *Sonlin*, because Rule 238 does not require a written clause specifying that a settlement proposal is valid for 90 days, we need not address this argument.

The Court then vacated the portion of the judgment related to delay damages and remanded to the trial court for a recalculation of the delay damages award.

■ Jerrell and Skip's argue that the trial court erred in relying upon *Sonlin* because the facts in that case are distinguishable from those in this case because the offer in *Sonlin* was only open for only seven days, which is directly contrary to the 90–day requirement in Rule 238. They point out that in this case, not only was the full policy amount offered to settle the case, but they also offered to interplead[7] the money into court which the trial court denied. Additionally, Jerrell stated in an affidavit that he had no other assets that could be utilized to satisfy any portion of the judgment; therefore, all of the assets available for settlement had been offered. However, we need not address whether we would adopt the reasoning of the Superior Court in *Sonlin* because the settlement offer made by Jerrell and Skip's did not comply with Rule 238, even if it had contained language that the offer was open for 90 days.

■ The purpose of Rule 238 delay damages is to promote negotiations and settlement between the parties and "[a]bsent a condition upon which a party has the right to insist and to which the other party cannot reasonably object, such a tender has been considered invalid," *Shellhamer v. Grey*, 359 Pa.Super. 499, 519 A.2d 462 (1986), *petition for allowance of appeal denied*, 515 Pa. 594, 528 A.2d 603 (1987), the imposition of Rule 238 delay damages is proper. To carry out that purpose, Rule 238 requires that a written offer of a structured settlement underwritten by a financially responsible entity be made and continued in effect for at least 90 days or until trial commences. In this case, the proposed settlement letter was sent to the various plaintiffs on behalf of Jerrell and Skip's by a financially responsible entity, Nationwide, and continued in effect for at least 90 days because it was made on September 13, 1994, and remained in effect until the conclusion of the damage aspect of the trial without ever being withdrawn or accepted. Because the accident occurred on October 10, 1993, the offer was made within the one-year requirement set forth in Rule 238. The settlement offer, however, was conditioned upon all of the plaintiffs accepting the offers made to them specifying: "This agreement would have to be made with collective approval from all parties involved."

In *Overdorf v. Fonner*, 748 A.2d 682 (Pa.Super.), *petition for allowance of appeal denied*, 564 Pa. 713, 764 A.2d 1071 (2000), the Superior Court reviewed a conditional settlement offer and held that it was invalid. In that case, Overdorf was killed when she was hit by a car driven by Mrs. Fonner. The car she was driving had been rented by her husband in his name because his car was being repaired. The estate of the deceased sued, among

7. "An interpleader is the procedural mechanism through which adverse claimants against the money, property or debt held by another may be required to litigate their claims in one proceeding.... Rival claims against an insurer for insurance proceedings is a classic candidate for interpleader.... An interpleader's purpose is the avoidance of the expense and inconvenience which results from the defense of multiple actions arising out of identical claims of entitlement to a 'stake' of money, property or debt.... An interpleader may be properly granted under such circumstances to avoid exposing the defendant to the 'vexation of multiple suits or multiple liability upon the same claim....' However, interpleader should be denied where the petitioner has incurred independent liability to either of the claimants." *Lewandowski v. Life Insurance Company of North America*, 415 Pa.Super. 215, 608 A.2d 1087, 1088–1089 (1992) (citations omitted).

others, the Fonners and the rental company. The Fonners had coverage with liability limits of $50,000, while excess liability coverage was available through the rental company's carriers of $1,015,000. Prior to trial, in 1991, Fonner's insurance carrier offered to pay the limit of its policy of $50,000 to the estate "in exchange for a complete release of our insured [Fonner]." The estate did not accept the offer. Several years later, the Fonners filed for bankruptcy. Following the trial in 1998, a verdict was returned against Mrs. Fonner in the amount of $862,500. The estate filed a petition for delay damages.

Relying on Rule 238(b)(1)—that a defendant may oppose a motion for delay damages if it establishes that the requisite offer has been made—the Court first stated that it modified that rule "by declaring that a plaintiff shall not be awarded damages for delay after the date of the defendant's offer when the court determines that, because of the defendant's indigence, the offer was the full amount available for payment of the plaintiff's claim and it was impossible for the defendant to have offered more." *Id.* at 685. The Court, however, then determined that regardless of Fonner's indigency, the insurance carrier's conditional offer to pay its policy limits on behalf of Fonner was not a full offer of settlement as contemplated by Rule 238 because it was a general release and would have foreclosed the estate from proceeding against the rental car company for its excess liability coverage.

 In this case, the settlement offer was conditioned upon all 12 plaintiffs agreeing to accept specified amounts. Because the offer could not be accepted by any individual plaintiff without the agreement of all of the other plaintiffs, it was invalid. Even though the verdicts in this case were more than the policy limits of Jerrell and Skip's insurance policy, that did not preclude Nationwide, acting on behalf of Jerrell and Skip's, from sending each plaintiff a letter indicating that it was offering the full amount of its insured's policy—$100,000—and the parties could divide the $100,000 as they saw fit. As long as the letter did not condition the acceptance of the offer upon all of the plaintiffs agreeing to accept the offer, it would have been a bona fide offer for purposes of Rule 238. However, the letter was conditional and, accordingly, was not a bona fide offer.[8]

8. In the alternative, Jerrell and Skip's argue that the filing of the interpleader action for the entirety of its policy should have tolled the delay damages. We note that the delay damages were not imposed against Nationwide but against Jerrell and Skip's who are, it seems, indigent and which no one has disputed. Necessarily, the delay damages were awarded against Jerrell and Skip's when Nationwide attempted to interplead its coverage because Nationwide was only protecting itself from any further delay damages and Jerrell and Skip's were still open to liability. Paragraph 32 of the interpleader petition provides:

The Petitioner has no desire to contest the issue of liability on its own behalf but instead, seeks to deposit the amount of its liability insurance into the registry of this Court so that the claimants may assert and prove their claims for distribution of the policy amount. By so doing, *the Petitioner in no way intends to affect or limit its insured's ability to raise any and all defenses which the insured may have to the various claims.* (Emphasis added.)

"Where an insurer offers its policy limits within the time period of Rule 238 that excludes imposition of delay damages, it is not responsible for those damages following a verdict." *Miller v. Hellman,* 433 Pa.Super. 539, 641 A.2d 592 (1994), *petition for allowance of appeal denied,* 540 Pa. 601, 655 A.2d 990 (1995). While Jerrell filed an affidavit of indigency and would not be able to pay any delay damages, whether Nationwide would be responsible for those damages is a question yet to be answered and can only be raised once the parties attempt to collect their judgments.

## WALTER BAKER'S APPEAL

### I.

Baker makes two arguments on appeal: first, he contends that the trial court erred in dismissing his claims against the Turnpike Commission and Lane Construction on the basis that they were not properly served with notice of his complaint because both parties were provided with proper service within the statute of limitations.

### A.

■ To summarize the prior proceedings, the accident occurred on October 10, 1993. Baker filed his complaint against both parties on October 10, 1995, within the two-year statute of limitations.[9] On November 9, 1995, he amended the complaint to remove the name of one of the attorneys but no substantive changes were made. Baker filed a praecipe to reinstate the complaint on December 15, 1995, and the complaint was reinstated on December 26, 1995. The Turnpike Commission was served with the reinstated complaint on January 10, 1996. The Turnpike Commission filed a motion for judgment on the pleadings arguing that the complaint was not timely served and it should be dismissed from the action. The trial court granted the motion after finding that Baker made no attempt to serve the Turnpike Construction within 30 days of the filing of the original complaint as required by Pa.

R.C.P. Nos. 401(a)[10] and 422(a)[11] and only took steps to initiate service on December 26, 1995, with actual service occurring on January 10, 1996. The trial court further found that the filing of the complaint in 1995 did not toll the statute of limitations because the filing of the original process did not operate to toll the statute of limitations unless Baker had made a good faith effort to effectuate service within the time period provided for by the rules, which he had not.

Baker now argues that the trial court erred in granting the Turnpike Commission's motion for judgment on the pleadings because his complaint was amended on November 9, 1995, and reinstated on December 26, 1995. He relies on the holding in *Lamp v. Heyman*, 469 Pa. 465, 366 A.2d 882 (1976), which did not involve service of a complaint but rather a writ of summons, for the proposition that a writ of summons not filed within 30 days may be reinstated at any time or any number of times after the original issuance during a period equivalent to that permitted by the applicable statute of limitations for the underlying action. Baker contends that the same rationale should be applied to service of a complaint, and because his complaint was reinstated as of December 26, 1995, he had 30 days from that date to serve the Turnpike Commission which he did when he served it with his complaint on January 10, 1996.

---

9. 42 Pa.C.S. § 5524(2) provides:

 The following actions and proceedings must be commenced within two years:

 (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

10. Pa. R.C.P. No. 401(a) provides: "[o]riginal process shall be served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint." ·

11. Pa. R.C.P. No. 422(a) provides:

 Service of original process upon the Commonwealth or an officer of the Commonwealth, or a department, board, commission or instrumentality of the Commonwealth, or a member thereof, shall be made at the office of the defendant and the office of the attorney general by handing a copy to the person in charge thereof.

The Turnpike Commission, however, argues that *Lamp* also holds that a writ of summons only remains effective if the plaintiff refrains from a course of conduct that serves to stall the legal machinery he has set in motion. Therefore, if a plaintiff fails to make a good faith effort to effect service, the writ of summons will be dead upon its expiration and the *Lamp* rule will not allow the writ of summons to be reinstated and served beyond the period of the statute of limitations. *Cahill v. Schults,* 434 Pa.Super. 332, 643 A.2d 121 (1994). The Turnpike Commission contends that the trial court properly dismissed Baker's complaint because he did not make a good faith effort to serve his complaint and it was not filed within the applicable 30 days statute of limitations. We agree.

▮ In *Schriver v. Mazziotti,* 432 Pa.Super. 276, 638 A.2d 224 (Pa.Super.), *petition for allowance of appeal denied,* 539 Pa. 638, 650 A.2d 52 (1994), a case actually involving a plaintiff's failure to timely serve a complaint on a defendant, the Superior Court also relied upon *Lamp* in affirming the dismissal of the complaint because it was not served within the statute of limitations. It stated:

> Plaintiffs are required to make a good faith effort to notify a defendant of a commenced action ... *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976). The purpose behind this requirement is "to avoid the situation in which a plaintiff can bring an action, but by not making a good faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations." *Lamp,* 469 Pa. at 478, 366 A.2d at 889. Thus the Court in *Lamp* held that a "writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Id.*

＊ ＊ ＊

> A plaintiff will, therefore, fail to satisfy the good faith requirement when he takes affirmative steps to prevent service on a defendant. (Citations omitted.) Additionally, "At a minimum, the good faith effort required in *Lamp v. Heyman,* supra, mandates compliance with the Pennsylvania Rules of Procedure, and importantly, local practice." (Citations omitted.) Moreover, when "a praecipe is filed but the writ is not served the burden is on the plaintiff to show that he made a good faith attempt to have the writ served." (Citations omitted.) *The same burden applies when a complaint is filed but service is not effected.* (Emphasis added.)

*Id.* at 226. Although Baker now contends that the Turnpike Commission was not prejudiced by the late service, this argument ignores that he had the burden to show that he made a good faith attempt to serve the complaint, *Green v. Vinglas,* 431 Pa.Super. 58, 635 A.2d 1070 (1993), *petition for allowance of appeal denied,* 540 Pa. 583, 655 A.2d 515 (1995), and that a lack of prejudice to a defendant does not excuse a plaintiff's failure to comply with the requirement of the applicable statute of limitations. *Watts v. Owens–Corning Fiberglas Corporation,* 353 Pa.Super. 267, 509 A.2d 1268 (1986), *petition for allowance of appeal denied,* 514 Pa. 632, 522 A.2d 559 (1987). (Statutes of limitations are statutes of repose and on their face they seek to create time bars which are mechanical in their application and have no relationship to the merits of the claim or whether, as in the case of laches, any harm results to the defendant from the delay.)

▮ Baker then argues that the trial court's granting of judgment on the pleadings was improper because there was no

evidentiary hearing to determine what constituted a good faith effort to serve the complaint. However, based on the pleadings, the trial court found that Baker had not made a good faith effort at service because he neither served the Turnpike Commission within 30 days of filing his complaint nor offered any explanation for his failure to do so. Because judgment on the pleadings is only proper where the pleadings establish evidence that there are no material facts in dispute, such that a trial by jury would be unnecessary, *Travelers Casualty & Surety Company v. Castegnaro*, 565 Pa. 246, 772 A.2d 456 (2001), and Baker's responsive pleading did not explain why he did not provide timely service, there were no material facts in dispute and the trial court did not abuse its discretion by dismissing Baker's complaint against the Turnpike Commission.

### B.

■ As to Lane Construction, a Connecticut company, it filed a motion for summary judgment based on the statute of limitations because it was not served with the amended complaint until August 29, 1996, well after the 90-day period during which service could be made on an out-of-state defendant as required by Pa. R.C.P. No. 404.[12] Although Baker claimed that he did not have an address for Lane Construction, the trial court found that no information was offered regarding any efforts to obtain an address and took judicial notice that the other parties served Lane Construction within two years of the accident. The trial court then found that Baker's lawsuit against Lane Construction was barred by the statute of limitations because it never made a reasonable effort to obtain an address at which Lane Construction could be served.

Baker now contends that the reinstatement of his complaint on December 26, 1995, should also serve to toll the statute of limitations because Allegheny County Common Pleas Court Judge Friedman ruled on service issues raised in preliminary objections to his pleadings by Patrick Burke and she found that the statute of limitations was tolled by the October 10, 1995 filing of his complaint when it was reinstated on December 26, 1995. Specifically, he argues that Judge Friedman ruled that a complaint was not dead because service was not effectuated within 30 or 90 days, and his service to Patrick Burke in September 1996 was proper because he was not acting in bad faith. He then argues that the coordinate jurisdiction rule should apply and Judge Friedman's ruling should have been followed by Judge Wettick, who found his service to Lane Construction in August 1996 was outside the statute of limitations.

■ Under the coordinate jurisdiction rule, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995). To determine if the rule applies, we must examine where the rulings oc-

---

12. Pa. R.C.P. No. 404 provides:
 Original process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof:
 (1) by a competent adult in the manner provided by Rule 402(a);
 (2) by mail in the manner provided by Rule 403;
 (3) in the manner provided by the law of the jurisdiction in which the service is made for service in an action in any of its courts of general jurisdiction;
 (4) in the manner provided by treaty; or
 (5) as directed by the foreign authority in response to a letter rogatory or request.

curred in the context of the procedural posture of the case:

> Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

*Riccio v. American Republic Insurance Company,* 550 Pa. 254, 261, 705 A.2d 422, 425 (1997).

Lane Construction argues that the coordinate jurisdiction rule is not applicable because different rulings were made in this case in different procedural contexts, because the preliminary objections of Patrick Burke denied by Judge Friedman were different procedurally than the motion for summary judgment filed by Lane Construction decided by Judge Wettick. Not only do we agree with Lane Construction, but even if we were to consider whether Baker's service of his complaint to Lane Construction was timely, we would have to agree with the trial court that Baker made no effort to locate Lane Construction and timely serve that company with a complaint, because Baker's attorney admitted in his deposition that no efforts were made within the first 90 days to attempt service upon Lane Construction by any means. Consequently, the trial court properly dismissed Lane Construction as a defendant from Baker's complaint.

## II.

Baker also contends that the trial court should not have remitted that part of the verdict against Jerrell and Skip's pertaining to Shawnn Baker from $3.2 million to $2.5 million because there was sufficient evidence to support the $3.2 million award. Specifically, he contends that Cyril Wecht, M.D. (Dr. Wecht), a forensic pathologist for the Westmoreland County Coroner's Office who performed the autopsy on Shawnn and who was the only individual who testified regarding the pain and suffering that Shawnn endured,[13] stated that Shawnn died from third degree burns over 100% of his body, but he was conscious for several seconds prior to his death. (Reproduced Record at 2419a.) Dr. Wecht explained that consciousness was evident because there was the existence of reddening internally and a minimal degree of blackening which meant that some breathing took place following the impact and during the fire. (Reproduced Record at 2421a.) Dr. Wecht further explained that Shawnn's brain was swollen, and the brain only swelled when a person was alive. (Reproduced Record at 2418a.) Baker argues that the jury weighed this evidence in making its award based on the trial court's instruction that it was to "award such an amount as you believe will fairly and adequately compensate for the mental and physical pain, suffering and inconvenience that the decedent endured from the moment of his injury to the moment of his death as a result of the accident." (Reproduced Record at 2404a.) Baker contends that it is within the province of the jury to determine what Shawnn's pain and suffering was worth, however, short in duration.

In Pennsylvania, the measure of damages in a survival action is the decedent's pain and suffering and loss of

---

13. Dr. Wecht is also the Coroner for Allegheny County.

gross earning power from the date of injury until death. *Nye v. Commonwealth of Pennsylvania, Department of Transportation,* 331 Pa.Super. 209, 480 A.2d 318 (1984). The amount of damages a person is to be awarded for pain and suffering is a jury question. *Bindschusz v. Phillips,* 771 A.2d 803 (Pa.Super.2001), *petition for allowance of appeal denied,* 567 Pa. 754, 790 A.2d 1012 (2001). A jury is given wide latitude in fashioning its verdict on damages, *Bonavitacola v. Cluver,* 422 Pa.Super. 556, 619 A.2d 1363 (Pa.Super.), *petition for allowance of appeal* denied, 535 Pa. 652, 634 A.2d 216 (1993), and its verdict will not be reversed unless it is so excessive that it shocks the court's conscience. *Id.* Judicial reduction of a jury award for compensatory damages is appropriate only when the award is plainly excessive and exorbitant. *Id.* The trial court may grant a request for remittitur only when a verdict that is supported by the evidence suggests that the jury was guided by partiality, prejudice, mistake or corruption. *Krysmalski by Krysmalski v. Tarasovich,* 424 Pa.Super. 121, 622 A.2d 298 (Pa.Super.), *petition for allowance of appeal denied,* 535 Pa. 675, 636 A.2d 634 (1993). "A remittitur should fix the highest amount a jury could properly award, giving due weight to all the evidence offered." *Cashdollar v. Mercy Hospital of Pittsburgh,* 406 Pa.Super. 606, 595 A.2d 70, 76 (1991).

In addressing Jerrell and Skip's post-trial motion contending that the $3.2 award was excessive, the trial court noted that $900,000 of the award was awarded for conscious pain and suffering while approximately $2.3 million was for Shawnn's economic loss. The trial court then found that the $900,000 award was excessive because while Dr. Wecht's testimony as a whole expressed with reasonable medical certainty that Shawnn experienced conscious pain and suffering following the impact until his death by fire, his testimony also indicated that Shawnn was only alive for several seconds. The trial court stated:

> I agree with defendants that the jury's awards for pain and suffering are plainly excessive and exorbitant. The verdicts so shock the sense of justice as to suggest that the jury was influenced by mistake. It is apparent that the jury failed to take into consideration that the conscious pain and suffering was only for a very brief time. With respect to the claim of Doran Bradley, I find that defendants are entitled to a remittitur reducing damages by $700,000. I make the same finding with respect to the claim of Shawnn Bradley.

(Trial Court opinion of August 10, 2000, at p. 15; Reproduced Record at 4358a.)

Clearly, Shawnn's pain and suffering prior to his death as a result of third degree burns over his entire body required an award that took that into account, even though it lasted only for a few seconds. However, we agree with the trial court that the $900,000 award was excessive because an award for pain and suffering is intended to compensate the victim for the actual pain he felt and suffered as a result of injuries sustained; therefore, the shorter the duration of pain and suffering, the smaller the award.[14] Here, the only testimony regarding the duration of Shawnn's pain and suffering was from Dr. Wecht, who stated the following:

---

**14.** To further understand the limiting of compensation, *see e.g., Nye,* holding that where a decedent is killed instantaneously or the decedent is not conscious between the time of injury and the time of death, there can be no recovery for pain and suffering in a survival action.

Q. (By counsel) From your medical history and from your examination of this particular decedent do you have an opinion as to how long he may have been alive?

A. (By Dr. Wecht) I would say this child would have been alive also for a brief time, for several seconds. I don't believe the child lived—I don't believe the child was conscious for a period beyond several seconds.

I believe the child lived then for—depending upon how rapidly the fire ensued, how intense the heat was in the air, death might have occurred in a matter of a few minutes. . . . .

Now, here again, the carbon monoxide level was negative. So what that tells me is that the child did not continue to breathe for a long time after the fire started. Otherwise, you would get some build-up, but these findings do indicate that the child was alive after the impact and, in my opinion, would have been conscious for several seconds at least by breathing in this material and allowing the brain to swell.

Also, again, I want to make it clear that consciousness and unconsciousness are not things that we can see at autopsy. We cannot look at a brain and say that a person was conscious or unconscious. I do want to make that clear. There is no way that anybody in the world can do that. You can only draw conclusions. You can only draw inferences from what you find. And the opinions I've expressed are expressed with reasonable medical certainty based upon my findings and the inferences I have drawn from them.

(Reproduced Record at 2420–2421a.) Because it was Dr. Wecht's opinion that Shawnn was alive and conscious for only several seconds after the car he was riding in was impacted by Skip's truck, Shawnn's pain and suffering was for a very short duration and the jury's award was excessive. Consequently, the trial court did not err in granting a remittitur of $700,000.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 6th day of November, 2002, the order of the Court of Common Pleas of Allegheny County, is affirmed.