J-A23039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KATHERINE HARRIGAN, ADMINISTRATRIX OF THE ESTATE OF JOSHUA C. BULLOCK | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| KIRSTEN FORSYTHE, SCOTT MASSEY AND OM MEDICAL GROUP, P.C. T/A RED LION PAIN & PRIMARY CARE | : : : | No. 1421 MDA 2021 |

Appeal from the Order Entered October 22, 2021
In the Court of Common Pleas of York County Civil Division at No(s):
2021-SU-000053

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JUNE 30, 2023**

Katherine Harrigan (Appellant), administratrix of the Estate of Joshua

C. Bullock (Decedent), appeals from the order entered in the Court of Common

Pleas of York County sustaining the preliminary objections filed by Kirsten

Forsythe, Scott Massey, and OM Medical Group, P.C. t/a Red Lion Pain &

Primary (collectively, Appellees), and dismissing Appellant's claims against

them in their entirety.  Appellant contends the trial court erred in finding that

she failed to properly serve Appellees in a timely manner, and therefore, it

lacked personal jurisdiction pursuant to Pennsylvania Rule of Civil Procedure

_____

[*] Former Justice specially assigned to the Superior Court.

1028(a)(1)[1] to review the matter. Based on the following, we reverse the court's October 22, 2021, order and remand for further proceedings.

The relevant facts and procedural history are as follows:

> [Appellant] was . . . appointed Administratix of the Estate of Joshua C. Bullock [(Decedent)], pursuant to Letters of Administration issued on May 15, 2020. [Appellant] is the Mother of [D]ecedent.
>
> [Appellee] Kristen Forsythe is an adult individual and Certified Registered Nurse Practitioner (CRNP) who, at the time of the events was an employee, agent, servant, partner, or shareholder, actual or ostensible/apparent with one or more of the other defendants (herein "[Appellee] Forsythe"). [Appellee] Scott Massey, MD, is an adult individual and medical doctor who is an employee, agent, servant, partner, or shareholder, actual or ostensible/apparent with Defendant OM (herein "[Appellee] Massey"). [Appellee] OM Medical Group, P.C. t/a Red Lion Pain & Primary Care, is a Professional Corporation formed and organized under the laws of the Commonwealth of Pennsylvania. The corporation is engaged in the business of providing health care services to the general public, and, at all times relevant to the events of this case, maintained a principal place of business at Red Lion Pain & Primary Care, 718 S. Main Street, Red Lion, Pennsylvania 17356 (herein "[Appellee] OM"). [Appellant] is asserting a professional liability claim and wrongful death cause of action against [Appellees].

---

[1] Rule 1028 provides, in relevant part:

> (a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
>
> (1) lack of jurisdiction over the subject matter of the action or the person of the defendant, improper venue or **improper form or service of a writ of summons or a complaint**[.]

Pa.R.C.P. 1028(a)(1) (emphasis added).

[D]ecedent was born July 22, 1991 and was [27] years old at the time of his death on January 16, 2019. Decedent was never married and had no children.

Decedent first visited Red Lion Pain & Primary Care on August 27, 2018, complaining of right knee pain. He was seen by [Appellee] Forsythe who determined he had "right progressive Osgood Schlatter's disease with tibial bone/ligament separation" and "left medical tibial plateau fracture." [Appellee] Forsythe prescribed [five milligrams two times per] day of Oxycodone to be taken orally and [ten milligrams two times per] day of Oxycontin also to be taken orally. Decedent's total medication was equal to 45 MME/day.[2] It is alleged that [a] dosage above 90 MME/day is associated with an increased risk of harm, including death. [Appellee] Massey reviewed [D]ecedent's case on September 1, 2018, and agreed with [Appellee] Forsythe's assessment, findings, and plan.

Over the course of the next few months, . . . Decedent's medication was adjusted multiple times, and at each stage of the change in medication [Appellee] Forsythe submitted the medication change and [Appellee] Massey reviewed and agreed with the assessment. One of the changes involved replacing Oxycontin with Fentanyl transdermal patches.

On January 8, 2019, [D]ecedent's medication was changed to substitute Dilaudid for Oxymorphone [five milligrams two times per] day and the Fentanyl prescription remained the same. This changed prescription kept [D]ecedent's opioid levels above 120 MME/day. The decedent died on January 16, 2019, eight days after his last visit to Red Lion Pain & Primary Care. The cause of death was determined to be "acute fentanyl toxicity." . . .

Trial Ct. Op., 8/3/21, at 1-4 (some paragraph breaks added).

On January 12, 2021, Appellant filed a complaint against Appellees, asserting negligence and professional liability claims, as well as a wrongful

_____

2 "MME" stands for "morphine milligram equivalents[.]" Complaint, 1/12/21, at 3.

death cause of action. On February 2, 2021, Appellant filed a motion for the admission of Ray M. Shepard, Esquire as additional counsel *pro hac vice*.[3] Three days later, the court granted Appellant's motion concerning Attorney Shepard. **See** Order, 2/5/21. The certified docket entries include a notation that the York County Prothonotary's Office provided notice of the trial court's order pursuant to Pennsylvania Rule of Civil Procedure 236 that same day.

During this time, counsel for Appellee Massey entered his appearance in the matter. **See** Praecipe to Enter Appearance, 4/12/21.

On April 15, 2021, Appellant filed three notarized affidavits of service. With respect to Appellee Massey, Appellant filed a notarized affidavit of service wherein Richard William DeLauder, a process server, indicated that "on April 5, 2021, at 1:03 p.m.," he served, *inter alia*, Appellant's complaint "to hand." DeLauder Affidavit of Service, 4/15/21, at 1 (unpaginated; emphasis omitted). The affidavit of service further indicated that the documents were delivered to Appellee Massey in the following manner: "Sub-Served, Victoria Wynegar, Office Assistant." **Id.** As for Appellee Forysthe, Appellant filed a notarized affidavit of service wherein Steven M. Silver, who is a process server, indicated he "served upon Kristen Forsythe P/K/A Kirsten Forsythe . . . on the 11th day

---

[3] Attorney Shepard is a licensed attorney in Maryland. **See** Appellant's Motion for Admission Pro Hac Vice of Ray M. Shepard, 2/2/21, at 2. He, along with Elizabeth Reeves, Esquire, who has a law office in York, Pennsylvania, have represented Appellant throughout this matter.

of April, 2021, at [ ] Plank Road, Stewartstown, Pennsylvania 17363 at 11:45 a.m. [by] delivering and leaving with the person served [*inter alia*, the complaint]." Silver Affidavit of Service, 4/15/21, at 1 (unpaginated). Lastly, with regard to Appellee OM, Appellant filed a notarized affidavit of service wherein Roger Metzgar, a process server, indicated he received the complaint to be served on "OM Medical Group, P.C., United States Corporation Agents, Inc., [ ] Tilghman Street, Rear, Allentown, PA 18109." Metzgar Affidavit of Service, 4/15/21, at 1 (unpaginated). He indicated that, on April 2, 2021, at 1:17 p.m., he "substitute served by delivery a true copy [of the documents] to Cory Douglas as Operations Manager, a person employed therein and authorized to accept service for OM Medical Group, P.C. at . . . the within person's usual place of **Work**[.]" *Id.* (some emphasis omitted).

On April 20, 2021, Appellee Massey filed preliminary objections to Appellant's complaint for improper service and lack of personal jurisdiction pursuant to Rule 1028(a)(1). *See* Preliminary Objections of Appellee, Scott Massey, M.D., to Appellant's Complaint, 4/20/21, at 5. Appellee Massey pointed out that Appellant filed her complaint on January 12, 2021, in relation to the purported negligence that resulted in the death of Decedent on January 16, 2019. *Id.* He noted that the applicable statute of limitations is two years,[4]

_____

[4] *See* 42 Pa.C.S. § 5524(2) ("The following action[ ] and proceeding must be commenced within two years . . . (2) [a]n action to recover damages for
*(Footnote Continued Next Page)*

and Appellant "ha[d] neither effectuated proper service upon [Appellee] Massey, nor ha[d] she exhibited the good-faith requirement to effectuate service necessary to toll the applicable statute of limitations." *Id.* at 4. Appellee Massey alleged:

> 8. In this regard, the docket reflects that no actions were taken on behalf of [Appellant] between the filing of the Complaint, January 12, 2021, and April 15, 2021, to effectuate service in accordance with the precise requirements of the Rules of Civil Procedure, including, a request to the York County Sheriff for Service, reinstatement of the Complaint and/or an affidavit of non-service.

> 9. Instead, on April 15, 2021, [Appellant] filed an Affidavit of Service indicating that [Appellee] Massey was served by a private process server at [ ] Main Street, Red Lion, PA. . . .

> 10. In Pennsylvania, "original process shall be served within the Commonwealth only by the sheriff." Pa.R.C.P. 400(a). There is absolutely no exception to this long standing procedural mandate for service within the Commonwealth absent prior Court Order.

> 11. Consequently, as [Appellee] Massey is a private citizen residing in this Commonwealth, service by a private process server is legally improper and ineffective.

*Id.* at 5-6 (record citation & emphases omitted). Appellee also complained that Appellant "failed to take necessary actions to toll the statute of limitations in order to effectuate proper service as [Appellant] has continually failed to reinstate the [c]omplaint." *Id.* at 7. He further stated that "actual notice

---

injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.").

cannot be established as the improper [a]ffidavit of [s]ervice confirms that actual notice was not provided until, at the earliest, April 2, 2021, approximately [three] months after the expiration of the applicable statute of limitations." *Id.*

On May 10, 2021, Appellant filed a motion in opposition to Appellee Massey's preliminary objections. She alleged that Appellee Massey "received actual notice of commencement of the action against him in February 2021, and within [30] days of the [c]omplaint being filed, when the Prothonotary mailed a copy of the [o]rder admitting [Attorney] Shepard into the case *pro hac vice* to him on February 5, 2021." Appellant's Opposition to Appellee Massey's Preliminary Objections to Appellant's Complaint, 5/10/21, at 5.

One day later, Appellee Forsythe filed preliminary objections to Appellant's complaint, alleging similar arguments to those presented by Appellee Massey. Appellant filed an opposition to Forsythe's preliminary objections.

During this time, on April 28, 2021, Appellant filed a *praecipe* to reinstate the original complaint. Less than three weeks later, Appellant filed returns of service from the sheriff, indicating the following: (1) on May 4, 2021, a sheriff handed a copy of the complaint to Jessica Blackwell, a medical assistant, who accepted as "adult person in charge" for Appellee Massey at Red Lion Pain & Primary Care; (2) also, on May 4, 2021, a sheriff personally handed a copy of the complaint to a person representing themselves to be

Appellee Forsythe at the Plank Road address; and (c) two days later, a sheriff served Cory Douglas, who accepted for Appellee OM at Red Lion Pain & Primary Care. *See* Sheriff's Return of Service, 5/17/21, at 1 (unpaginated).

On August 3, 2021, the trial court sustained Appellee Massey's preliminary objections and dismissed Appellant's claims against him.[5] Ten days later, the court also sustained Appellee Forsythe's preliminary objections and dismissed Appellant's claims against her.[6]

Subsequently, on September 2, 2021, Appellant filed a *praecipe* for the entry of a default judgment against Appellee OM on the basis of its failure to enter an appearance or respond to the complaint. Eight days later, Appellee OM filed a petition to open the default judgment, and on September 15th, the trial court granted the petition to open and vacated the default judgment entered against Appellee OM.

Like Appellees Massey and Forsythe, Appellee OM then filed preliminary objections on October 1, 2021, asserting improper service and lack of personal

---

[5] That same day, the trial court filed a memorandum opinion, explaining its rationale for sustaining preliminary objections.

[6] On August 17, 2021, Appellant filed a petition seeking to have the August 3, 2021, order deemed final and appealable pursuant to Pa.R.A.P. 341(c). The trial court granted the petition seven days later. On September 1, 2021, Appellant filed a notice of appeal to this Court, which was docketed at Docket No. 1168 MDA 2021. However, Appellant subsequently filed a *praecipe* to voluntarily discontinue the appeal, and on that same date, we marked the appeal as discontinued.

jurisdiction. Appellant filed a response thereafter. On October 22, 2021, the trial court sustained Appellee OM's preliminary objections and dismissed Appellant's claims against Appellee OM.[7]

_____

[7] We note that "[w]hether an order is appealable is a jurisdictional question. An appeal lies only from a final order, unless permitted by rule or statute." *Stewart v. Foxworth*, 65 A.3d 468, 470-71 (Pa. Super. 2013) (citations omitted). *See also* Pa.R.A.P. 341(b)(1) (providing that a final order is any order that disposes of all claims and of all parties). However, an order dismissing a complaint without prejudice is generally considered interlocutory. *See Mier v. Stewart*, 683 A.2d 930, 930 (Pa. Super. 1996) ("For finality to occur, the trial court must dismiss with prejudice the complaint in full.").

In the case *sub judice*, the trial court sustained the three Appellees' preliminary objections and dismissed all of Appellant's claims against them for lack of service and personal jurisdiction. While the trial court's orders omitted the phrase "with prejudice," the trial court did not grant Appellant leave to amend her complaint or indicate the order was "without prejudice."

"[T]o determine whether finality is achieved, we must consider whether the practical ramification of the order will be to dispose of the case, making review appropriate." *Fastuca v. L.W. Molnar & Associates*, 950 A.2d 980, 986 (Pa. Super. 2008) (citations & internal quotation marks omitted). *See also Liberty Bank v. Ruder*, 587 A.2d 761, 763 (Pa. Super. 1991) ("Rather than be bound by a hard and fast rule, we have repeatedly found that certain orders which have not put a litigant 'out of court' or completely terminated the litigation have nevertheless been held to possess sufficient aspects of finality to be appealable because the effect of the order has been to preclude the litigant from presenting her claim.") (citation & some quotation marks omitted); *West v. West*, 446 A.2d 1342, 1342 (Pa. Super. 1982) ("The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. If the practical effect of an order is to put an appellant out of court by precluding him from presenting the merits of his claim, the order is appealable.") (citations & internal quotation marks omitted).

Because the practical ramification of the trial court's October 22nd order was to place Appellant out of court and preclude her from presenting the merits of her claims as to all three Appellees, we conclude the order is final *(Footnote Continued Next Page)*

Appellant filed this timely appeal.[8] The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, to which she timely complied. The trial court issued its Pa.R.A.P. 1925(a) opinion, explaining that it would be incorporating its August 3, 2021, opinion.

Appellant raises the following issues for our review:

(1) May a timely-filed complaint be dismissed for lack of personal jurisdiction over the defendant when there is unrebutted evidence the defendant received actual notice of commencement of the lawsuit against him or her within [30] days of the filing of the complaint, but which notice is not the result of service of process strictly in compliance with the rules of civil procedure?

(2) Did the evidence before the Court of Common Pleas raise a factual dispute regarding [Appellees'] actual notice of the commencement of the lawsuit against them such that the case was not "free and clear of doubt" where the evidence before the court showed: (a) the Office of the Prothonotary mailed copies of the Order admitting [Appellant's] counsel *pro hac vice* in three separate envelopes to each [Appellee] at "718 S. Main Street, Red Lion, PA 17356;" (b) [Appellees] admit "718 S. Main Street, Red Lion, PA 17356" is a correct address; (c) each envelope was date-stamped by the Prothonotary showing the date mailed; (d) none of the envelopes addressed to [Appellees] were returned to the Prothonotary as undeliverable; and (e) a copy of the same Order mailed to [Appellant's] Pennsylvania counsel in York, Pennsylvania

---

and appealable. *See Jones v. McGreevy*, 270 A.3d 1, 9 n.12 (Pa. Super. 2022), *appeal denied*, 48 WAL 2022 (Pa. Jun. 22, 2022)

[8] The trial court entered three separate orders sustaining the preliminary objections of each Appellee individually. Appellant filed a single notice of appeal. We discern no error in this regard. *See Fulano v. Fanjul Corp.*, 236 A.3d 1, 8 (Pa. Super. 2020) (concluding plaintiff properly filed a single notice of appeal from separate orders sustaining the defendants' preliminary objections after the plaintiff corrected waited until all defendants had been dismissed in case).

was returned to the Prothonotary as undeliverable?

(3) Was the Court of Common Pleas required to take evidence or hold a hearing on the issue of [Appellees'] actual notice of the commencement of the lawsuit against them where the evidence before the court showed: (a) the Office of the Prothonotary mailed copies of the Order admitting [Appellant]'s counsel *pro hac vice* in three separate envelopes to each [Appellee] at "718 S. Main Street, Red Lion, PA 17356;" (b) [Appellees] admit "718 S. Main Street, Red Lion, PA 17356" is a correct address; (c) each envelope was date-stamped by the Prothonotary showing the date mailed; (d) none of the envelopes addressed to [Appellees] were returned to the Prothonotary as undeliverable; and (e) a copy of the same Order mailed to [Appellant]'s Pennsylvania counsel in York, Pennsylvania was returned to the Prothonotary as undeliverable?

(4) Did the Common Pleas Court commit an error of law or an abuse of discretion when it failed to apply well-settled Pennsylvania law known as the "mailbox rule," under which proof of mailing creates a rebuttable presumption of receipt of the mailed item?

Appellant's Brief at 5-7.

It merits mention that while Appellant identifies four different issues in her statement of questions presented, she addresses them together in the argument section of her brief. The crux of Appellant's claims is that the trial court erred in sustaining Appellees' preliminary objections because it found that although her complaint was timely filed — and there is evidence that notice of the suit was mailed to each Appellee — the complaint was not properly served upon Appellees in compliance with the Pennsylvania Rules of Civil Procedure concerning service of process. **See** Appellant's Brief at 18. Moreover, she disagrees with the court's determination that the proper legal test, as forth in **Lamp v. Heyman**, 366 A.2d 882 (Pa. 1976), is limited to

what action is taken by a plaintiff attempting service. *See* Appellant's Brief at 19. Appellant then points to *McCreesh v. City of Philadelphia*, 888 A.2d 664 (Pa. 2005), stating in that case:

> [T]he [Pennsylvania Supreme] Court embraced "the logic of the *Leidich* [*v. Franklin*, 575 A.2d 914 (Pa. Super. 1990),] line of cases, which applying *Lamp*, would dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant."

Appellant's Brief at 21, *quoting McCreesh*, 888 A.2d at 674. Appellant states that under more recent case law, *Gussom v. Teagle*, 247 A.3d 1046 (Pa. 2021), the proper test is not limited to that single inquiry regarding a plaintiff's actions or failure to act, but "there must also be an absence of 'evidence to indicate that the defendant had actual notice of the commencement of the action within the relevant time frame,' regardless of the [p]laintiff's intentions." Appellant's Brief at 20. Furthermore, she suggests:

> The holdings in *Lamp*, *McCreesh*, and *Gussom* demonstrate that the critical inquiry when applying the *Lamp* Rule is whether the defendants have received actual notice of commencement of the action timely such that the policies underlying the statute of limitations are not undermined, regardless of whether such notice of commencement of the action arises from the [p]laintiff's actions or inaction.

*Id.* at 35 (citation & quotation marks omitted).

Applying these cases to the facts at issue, Appellant alleges that pursuant to the mailbox rule, proof of mailing creates a rebuttable presumption of receipt of a mailed item and here, it was "undisputed" that the Prothonotary's Office mailed the court's February 5, 2021, order "in three

separate envelopes to each [Appellee]." Appellant's Brief at 37. She points out that the order clearly put Appellees on "actual notice" of the commencement of litigation with the case caption identifying the parties, a case number, and an "indication of a requested 'JURY TRIAL.'" *Id.* at 37-38. She also maintains that the Prothonotary's Office "mailed copies" of the order "to each [Appellee] pursuant to Pa.R.C.P. 236" and "[t]here is no evidence that any of three letters addressed to the [Appellees] were ever returned as undeliverable to" the Prothonotary. *Id.* at 38-39 (reproduced record citation omitted). Appellant asserts Appellees never rebutted that presumption concerning actual notice. *Id.* at 39-40. She concludes that the trial court erred in its "singular focus on [her] actions to serve the complaint, rather than on determining whether the policies underlying the statute of limitations were undermined by a lack of actual notice of the lawsuit's existence to" Appellees. *Id.* at 41-42.

Our standard of review of an order sustaining preliminary objections is well settled.

> We are reviewing an order that sustained preliminary objections to service of process and dismissed the action. In conducting such review, our standard of review is *de novo* and our scope of review is plenary. We must determine whether the trial court committed an error of law.

> When we review the trial court's ruling on preliminary objections, we apply the same standard as the trial court. In deciding a preliminary objection for lack of personal jurisdiction that, if sustained, would result in dismissal, the court must consider the evidence in the light most favorable to the nonmoving party. Where upholding the sustaining of preliminary objections

- 13 -

results in dismissal of the action, we may do so only in cases that are clear and free from doubt.

***Sawyers v. Davis***, 222 A.3d 1, 5 (Pa. Super. 2019) (citations & quotation marks omitted).

Pennsylvania Rule of Civil Procedure 1007 provides that "[a]n action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, or (2) a complaint." Pa.R.C.P. 1007(1)-(2). "Thus, it has been repeatedly held that, pursuant to this rule, the mere filing of a praecipe to commence an action is sufficient to toll the running of the statute of limitations." ***Johnson v. Allgeier***, 852 A.2d 1235, 1236-37 (Pa. Super. 2004) (citation & quotation marks omitted).

> The Rules require a plaintiff to serve the defendant with original process within 30 days after the issuance of a writ or the filing of a complaint. Pa.R.C.P. 401(a). If the plaintiff does not effectuate service within that time period, she can praecipe for reissuance of the writ or reinstatement of the complaint. Pa.R.C.P. 401(b)(1). So long as the plaintiff files her writ or complaint before the expiration of the statute of limitations applicable to her cause of action, the original filing, as well as any subsequent reissuances or reinstatements, tolls the statute of limitations.

***Gussom***, 247 A.3d at 1047-48. Moreover, Pa.R.C.P. 400 designates who may make service, while Pa.R.C.P. 402 provides for the manner of service.

In the seminal case of ***Lamp***, ***supra***, the Pennsylvania Supreme Court determined:

> [T]here is too much potential for abuse in a rule which permits a plaintiff to keep an action alive without proper notice to a defendant merely by filing a *praecipe* for a writ of summons and then having the writ reissued in a timely fashion without attempting to effectuate service. In addition, we find that such a

- 14 -

rule is inconsistent with the policy underlying statutes of limitation of avoiding stale claims, and with that underlying our court rules of making the processes of justice as speedy and efficient as possible. Accordingly, we believe that the rule must now be qualified, but prospectively in fairness to plaintiffs who have relied on the language of Rule 1007 and our previous interpretations of it. Our purpose is to avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations.

*Lamp*, 366 A.2d at 888-89 (footnotes & citation omitted). The Court then ruled that "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Id.* at 889 (footnote omitted). "This '*Lamp* rule' applies equally to actions commenced by way of the filing of a complaint." *Gussom*, 247 A.3d at 1048.

The *Lamp* rule was later refined by the Supreme Court in *Farinacci v. Beaver Cty. Indus. Dev. Auth.*, 511 A.2d 757 (Pa. 1986), which stated: "*Lamp* requires of plaintiffs a good-faith effort to effectuate notice of commencement of the action." *Id.* at 759.

In addition, *Farinacci* clarified that: (1) the plaintiff carries an evidentiary burden of proving that she made a good-faith effort to ensure that notice of the commencement of an action was served on the defendant, and (2) [i]n each case, where noncompliance with *Lamp* is alleged, the [trial] court must determine in its sound discretion whether a good-faith effort to effectuate notice was made[.]

*Gussom*, 247 A.3d at 1048 (citations & quotation marks omitted).

Subsequently, in *Leidich*, this Court espoused a more relaxed interpretation of the rule:

- 15 -

What is to be gleaned from **Lamp** and its progeny is that: (1) one's "good faith" effort to notify a defendant of the institution of a lawsuit is to be assessed on a case-by-case basis; and (2) the thrust of all inquiry is one of whether a plaintiff engaged in a "course of conduct" forestalling the legal machinery put in motion by his/her filings.

**Leidich**, 575 A.2d at 918 (citations omitted). The **Leidich** Court also stated:

"[W]e do not read **Lamp**, and the cases interpreting and applying it, to espouse a mechanical approach to the 'good faith' effort rule such that it allows for no exceptions in the face of an explanation and/or conduct which evidences an unintended deviation from the 'notice' requirement." **Id.** (citations omitted).

In **McCreesh**, the Pennsylvania Supreme Court noted:

The Superior and Commonwealth Courts have struggled to apply the **Lamp-Farinacci** rule, with some panels requiring plaintiffs to comply strictly with the Rules of Civil Procedure related to service of process and local practice in order to satisfy the good faith requirement, **see**, **e.g.**, **Teamann v. Zafris**, 811 A.2d 52, 63 (Pa. Cmwlth. 2002),[9] and other panels providing a more flexible approach, excusing plaintiffs' initial procedurally defective service where the defendant has actual notice of the commencement of litigation and is not otherwise prejudiced, **see**, **e.g.**, **Leidich**. . . .

**McCreesh**, 888 A.2d at 666 (footnote omitted). The **McCreesh** Court then held it would "**adopt the more flexible approach**, concluding that it

---

[9] In **Teamann**, the Commonwealth Court required strict compliance with the Pennsylvania Rules of Civil Procedure related to service of process and local practice in order to satisfy good faith requirement. **See Teamann**, 811 A.2d at 62-63.

sufficiently protects defendants from defending against stale claims without the draconian action of dismissing claims based on technical failings that do not prejudice the defendant." *Id.* (emphasis added).

In that case, the plaintiff filed a *praecipe* for a writ of summons "within the applicable two-year statute of limitations." *McCreesh*, 888 A.2d at 666 (footnote omitted). He then attempted to serve the lawsuit by delivering the writ to the City of Philadelphia's Law Department *via* certified mail. *See id.* The parties agreed that the Law Department received notice when a receptionist at the office signed for the package one day before the statute of limitations ran. *See id.* The plaintiff then filed his negligence complaint several months later. *See id.* Thereafter, the City filed preliminary objections, complaining that delivery of the writ by certified mailed did not comply with Rule 400.1,[10] which required that original process be served by either a sheriff or a competent adult, and that the complaint was not filed within the two-year statute of limitations period. *McCreesh*, 888 A.2d at 667. The trial court overruled the City's preliminary objections. *Id.* The Commonwealth Court rejected the plaintiff's reliance on *Leidich* by stating that compared to that case, the plaintiff "had not done anything to keep the legal machinery in play between" the time he served the writ and when he

---

[10] Rule 400.1 sets forth the service of process requirements for the First Judicial District, which is comprised of Philadelphia County.

filed the complaint. *Id.* at 669 (citation & quotation marks omitted). Moreover, the Commonwealth Court determined that the plaintiff's attempt at service "did not constitute a good faith effort to serve the defendant with process under the *Lamp* rule because [the plaintiff]'s attempt at service did not comply with relevant rules relating to service of process in Philadelphia County." *Id.* (citation omitted).

In reviewing the matter, the Supreme Court opined:

[W]e conclude that the rigid compliance requirement of the *Teamann* line of cases is incompatible with the plain language of Rule 401, the spirit of *Lamp*, and the admonition of Rule 126 to construe liberally the rules of procedure so long as the deviation does not affect the substantial rights of the parties. In *Lamp*, we sought to alleviate the hardships caused by plaintiffs who exploited the rules of civil procedure to make an end run around the statutes of limitations.

Neither our cases nor our rules contemplate punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice. Therefore, we embrace the logic of the *Leidich* line of cases, which, applying *Lamp*, would dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant.

*McCreesh*, 888 A.2d at 674 (footnote omitted). The Supreme Court then reversed the Commonwealth Court's decision, concluding that the plaintiff had supplied the City with actual notice. *Id.* The Court remanded the matter for the trial court to make a determination as to whether "the City suffered prejudice as a result of the delay of proper service between" the date when the plaintiff served the writ and when he filed the complaint. *Id.*

Most recently, in **Gussom**, the Supreme Court again revisited **Lamp**, **McCreesh**, and relevant precedent. In that case, the plaintiff attempted to serve the defendant with her timely complaint but discovered the defendant had moved to another state a year-and-a-half earlier. **Gussom**, 247 A.3d at 1049. After filing an affidavit of non-service, the plaintiff did not take any further action until she filed a *praecipe* to reinstate the complaint one month after the statute of limitations had expired. **Id.** A panel of this Court had "affirmed [the] trial court order that dismissed [the] plaintiff's complaint based upon the plaintiff's failure to serve timely her complaint upon the defendant despite the fact that the plaintiff's actions did not amount to intentional conduct." **Id.** at 1048. The Supreme Court "granted allowance of appeal to address whether the Superior Court's decision conflicts with **Lamp** and its progeny." **Id.**

In affirming this Court's decision, the Supreme Court held:

[A] trial court has the discretion to dismiss a complaint when a plaintiff fails to offer proof that she diligently attempted to serve process on a defendant in a timely manner and there is no evidence to indicate that the defendant had actual notice of the commencement of the action in the relevant time frame, regardless of whether the plaintiff acted or failed to act intentionally.

**Id.** The Court explained:

Although **McCreesh** made clear that a plaintiff could fulfill her good-faith service mandate without strictly complying with the service rules as long as her efforts resulted in actual notice of the lawsuit to the defendant, like **Farinacci**, **McCreesh** did nothing to modify a plaintiff's duty to act diligently to serve notice of the commencement of an action so as not to undermine the policies

- 19 -

that drive the statute of limitations. Nor, for that matter, did **McCreesh** change the rule clarified in **Farinacci** that the plaintiff carries an evidentiary burden to prove that she made a good-faith effort to effectuate service of process in a timely manner. To the contrary, as observed throughout this opinion, the **McCreesh** Court alluded to this evidentiary requirement. [**McCreesh**, 888 A.2d] at 672 ('We subtly altered our holding in **Lamp** in **Farinacci**, requiring plaintiffs to demonstrate 'a good-faith effort to effectuate notice of commencement of the action.'").

In sum, **Lamp** and its progeny require a plaintiff to make a good-faith effort in diligently and timely serving process on a defendant. When a defendant presents a factual dispute as to whether a plaintiff fulfilled this duty, the plaintiff carries an evidentiary burden to demonstrate that she met her good-faith mandate. If a plaintiff presents credible evidence that she made this attempt at service, then she fulfills her requirement to prove good faith. If a plaintiff does not present such evidence, then she has failed to satisfy her evidentiary burden, regardless of whether her actions (or inaction) were intentional, unintentional, or otherwise. However, pursuant to **McCreesh**, a trial court should not punish a plaintiff by dismissing her complaint where she is able to establish that her improper but diligent attempts at service resulted in the defendant receiving actual notice of the commencement of the action, unless the plaintiff's failure to serve process properly evinced an intent to stall the judicial machinery or otherwise prejudiced the defendant.

**Id.** at 1056-57.

In the case *sub judice*, the trial court examined the actions taken by Appellant and made the following determination:

The [trial c]ourt finds that [Appellant] has failed to meet [her] burden. First, [Appellant], inexplicitly, made absolutely no effort to serve [Appellees] within the time constraints of the rules. No reason was given as to why [she] did not make any attempt to serve [Appellees] for several months thereafter. [Appellant] was able to timely file the complaint despite a significant number of issues that made it difficult to do so. To be clear, the preparing and filing of the complaint was the difficult part. Once filed, all [Appellant] needed to do was file a Request for Service and pay the applicable fee to the Sheriff's Department for service to occur.

The failure to properly serve [Appellee] Massey could be overlooked if, pursuant to **Gussom**, [Appellant]'s actions in attempting to serve [Appellee Massey] resulted in actual notice to [him]. [Appellant] points to the Prothonotary's sending of [the trial court]'s [o]rder admitting [Appellant]'s counsel *pro hac vice* as evidence that [Appellee Massey] had actual notice of the commencement of the action. The relevant inquiry is what action was taken by [Appellant] to attempt service. In other words, it is [Appellant's] actions that are relevant, not the Prothonotary's. . . . Here, [Appellant] did absolutely nothing to serve [Appellees as to the initial complaint until nearly three months later]. Therefore, it is impossible for [Appellant] to argue that [her] attempts at service [fulfilled the good-faith mandate] to [Appellees] when it is undisputed that [she] made no attempt at all to serve [Appellees] with a copy of the [c]omplaint within the applicable time period.

Moreover, [Appellant] has the burden to show that [Appellee] Massey had "actual" knowledge of the commencement of the action. The only evidence [Appellant] can point to is an [o]rder by the [trial c]ourt appointing [Appellant]'s counsel *pro hac vice*. The envelope containing the [o]rder lists all [Appellees'] names and there is no proof that [Appellee] Massey ever personally received it. It is [Appellant]'s burden to show otherwise, and [she has] failed to do so.

Trial Ct. Op. at 8-9.

We disagree with the trial court's conclusion. First, we reiterate that pursuant to Pennsylvania Rule of Civil Procedure 126, we construe the rules of court liberally.[11] Second, we point out the courts of this Commonwealth

---

[11] Pennsylvania Rule of Civil Procedure 126 provides: "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. 126.

have moved away from a "rigid compliance requirement" or a "mechanical approach" to the "good faith" effort rule regarding a plaintiff's duty to secure service of notice. *See McCreesh*, 888 A.2d at 674; *Leidich*, 575 A.2d at 918. The Pennsylvania Supreme Court's decision in *Gussom* reaffirmed that notion, stating "[s]o long as the plaintiff files her writ or complaint before the expiration of the statute of limitations applicable to her cause of action, the original filing, as well as any subsequent reissuances or reinstatements, tolls the statute of limitations." *Gussom*, 247 A.3d at 1048. The *Gussom* Court reinforced the principle that it is the plaintiff's burden to demonstrate that she made a good-faith effort to effectuate service. *Id.* Accordingly, this legal authority is the lens through which we should review the present matter.

Furthermore, it should be emphasized that the purpose of the Rules of Civil Procedure concerning service of process[12] is simple — service puts a defendant (or defendants) on notice of the imminent complaint and ensuing litigation. *See* Pa.R.C.P. 400-405 (setting forth rules governing service).

Additionally, we note this is not a case where a plaintiff failed to take action after receiving an affidavit of non-service like in *Gussom*. Rather, this case is similar to the facts in *McCreesh*. Here, Appellant attempted to comport with the notice of service requirement *via* multiple endeavors. Appellant filed the complaint within the applicable two-year statute of

---

[12] *See* Pa.R.C.P. 400-430.

limitations. She then provided operative notice when she filed the motion for admission of Attorney Shepard as additional counsel *pro hac vice*, and the trial court entered an order granting that motion on February 5, 2021. Indeed, the February 5th order included a case caption identifying the parties as either plaintiff or defendants, a civil docket number, and that the matter pertained to a "JURY TRIAL." Order, 2/5/21. Moreover, the certified docket entries contain a notation indicating the Prothonotary provided notice of the trial court's February 5th order in accordance with Pa.R.C.P. 236 (rule governing notice by prothonotary of entry of order or judgment).[13]

Appellant also provided actual, albeit defective, notice when she employed private process servers, as opposed to a sheriff, to serve the complaints on the three Appellees. Notably, Appellees do not allege that they never received the complaints from the private process servers.[14] As such, it is undeniable that Appellees were put on notice of the impending lawsuit, and therefore, they endured no unfair surprise or prejudice.

Accordingly, Appellant's actions clearly conveyed her diligence and effort to comply with the service requirement. **See McCreesh**, **supra**; **Leidich**, **supra**. Likewise, there is no evidence that Appellant engaged in a course of

---

[13] As Appellant points out, "[t]here is no evidence that any of three letters addressed to the [Appellees] were ever returned as undeliverable to" the Prothonotary. Appellant's Brief at 38-39 (reproduced record citation omitted).

[14] **See** Appellee Forsythe's Brief at 5; Appellee Massey's and OM's Brief at 5.

conduct to forestall the "legal machinery" that she set in motion after filing her complaint. **See Lamp**, 366 A.2d at 889. We recognize that while there was a three-month hiatus between her defective service and proper service, it is evident Appellant was under the assumption the case was moving forward based on the court's February 5th order.

Turning now to the burden requirement as clarified in **Gussom**, the trial court found that Appellant did not produce any evidence demonstrating that she fulfilled her legal duty to make a good-faith effort to serve her complaint. We disagree. We discern that it is obvious from the record that Appellant met this burden as evinced by the actual and operative notices, and that no further evidentiary support was needed to satisfy this burden.

Accordingly, we reverse the trial court's decision to sustain Appellees' preliminary objections with respect to Appellant's improper service of the complaint pursuant to Rule 1028(a)(1) and dismissing Appellant's complaint. We remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Bowes joins the memorandum.

President Judge Emeritus Stevens files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/30/2023